THE STATE OF KANSAS, *ex rel.*, &c., v. A. L. McLAUGHLIN, *County Treasurer, et al.*

ACTION, *When it Cannot be Maintained by the State.* Where a school district had issued bonds in excess of its powers, and which were void in the hands of the holders; and thereafter on the maturity of the bonds a tax had been levied to pay them off, and proceedings had advanced so far that the tax-roll was in the hands of the county treasurer, and where the taxpayers, without multiplicity of suits, and by a single action, had adequate and complete protection against this illegal tax: *Held,* that the state could not maintain an action of injunction to restrain the treasurer from proceeding to collect said tax.

*Error from Brown District Court.*

INJUNCTION, brought in the name of *The State*, upon the relation of A. L. Williams, attorney-general, to restrain the collection of certain taxes. The district court, at the January Term 1874, refused a temporary injunction, holding and deciding, that *The State* as "plaintiff is not a party in interest to the subject-matter in said action, and cannot in any event be entitled to any relief therein prayed for;" and from this ruling and decision *The State* appeals. The facts are sufficiently stated in the opinion, *infra.* The original petition

was verified by R. E. W., J. F., and J. M. Y., then the director, treasurer and clerk of the school district issuing the school-district bonds alleged to be void. The "*First Congregational Church of Sabetha*," was joined with the county treasurer as a defendant, and the petition alleged that said church society claimed to own said bonds.

*W. D. Webb*, for plaintiff:

Said Sabetha church society was a party to the issuing of said bonds, and knew all the facts and circumstances connected with the issuing thereof. The trustees of the church, and nearly all the members of the church, lived in the school district at the time said bonds were issued, and the members of said church and the officers of the same were present at the school-district meetings, and voted in favor of the issuing of said bonds to *their church*. The petition and verification show that the persons who felt particularly interested in preventing the excess of power of the district, that is, the issuing and paying the bonds issued to the church society, were the officers of the school district. But a newly-elected set of officers now come to this court with a motion to dismiss the action here. The complication arises from a desire of the church defendant, who now has control of the officers of the school district, to assume control of the case, and to pay off the bonds to their church. This case is commenced on the relation of the attorney-general, and the school district as a body politic or corporate, has no power in the matter, to ask for the dismissal of the case, on the ground that the district is willing to pay the bonds. When a school district or a corporation seeks to pervert its powers, or to exceed them, the state is the proper party to prevent it. We claim that the newly-elected officers of the school district have no power to assume control of the case. Whenever it comes to the knowledge of the attorney-general that a school district is usurping power, or is proposing to divert the funds of the district, the state has the right to restrain the district from the abuse of powers granted, or from exercising those not

granted. School districts are a part of the governmental machinery of the state, subordinate departments of the state government, with their allotted functions to perform, possessing the power of controlling and expending large sums of the public funds, and when they attempt to improperly dispose of the public moneys, or exercise powers not granted, the state may, through its proper officers, prevent it. And when the state makes the attempt to prevent an unlawful application of the funds of the district, to say that the officers of the district may come in and assume control of the suit, dismiss it, and go on and misapply the funds, we respectfully submit is a dangerous doctrine. 51 Mo. 350; 5 Kas. 687; 10 Kas. 326.

No school district has the power to build a school-house to rent for a church, or for any other purpose. Much less have they the right to go to extra expense of putting in pews and pulpit "suitable for church purposes." There is no authority to allow a misapplication of the school-house, any more than there is of the school fund. The petition shows that it was the intention to devote the building to other purposes than school purposes, viz., "church purposes," and the bonds were voted and issued to enable the district to do so. We cite on this point, 23 Mich. 111; 60 Barb. 228; 26 Wis. 585; 54 Ill. 287; 7 Cush. 226; 25 Wis. 551.

*W. W. Guthrie,* for defendants:

The defendants contend that the state as plaintiff cannot bring and maintain this action; that the state has no interest in the subject-matter of litigation, and is not entitled to relief; and that no case is made out by petition. If the plaintiff's petition is true, this is a case in which each individual taxpayer is *individually* interested to the extent of his taxable property in the district, and all who desire to sue may do so, separately or jointly, under § 253 of the code. (4 Kas. 124.) But plaintiff has no interest, or right to prosecute this action, at least within § 26 of the code. Nor is the *state* or *county* interested, within § 136 of ch. 25, nor § 64 of ch. 102, Gen.

Stat.   And an adverse determination of this action would not bar the taxpayers of the district from litigating this matter.

This action is but an experiment, without any person responsible for costs, and comes within no principle laid down in *Craft v. Jackson County*, 5 Kas. 518.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by the state, upon the relation of the attorney-general, to restrain the county treasurer of Brown county from further proceedings. to collect certain taxes; and the principal question presented is, as to the right of the plaintiff to maintain the action. The facts alleged are, that a school district some years since made an arrangement with a church society by which, upon condition that the latter advanced a thousand dollars, the former should, in building the public school-house, make arrangements for a room for the church services of the latter; that this arrangement was carried into effect, and to secure this advancement two bonds of the district were executed, delivered to the church, and still remain in its possession; that the bonds maturing, a levy was duly made to pay them off, and that proceedings had advanced so far that the defendant, the county treasurer, had possession of the tax-roll, and was proceeding to collect, with other taxes, the tax for this purpose.  The church and the county treasurer are the only parties made defendants.  It is nowhere alleged that any taxpayer in the district questioned the legality of the tax, or had any objection to paying his proportion of the amount necessary to redeem these bonds.  Nor does it appear that there was any want of good faith on the part of the district, or the church, or that the contract was not satisfactory to both parties, and fully and fairly executed by both.  The case is rested upon the naked proposition, that the contract, being *ultra vires* of the district, the bonds are void, and that the taxpayers of the district, whether willing not, must not be allowed to pay them.  The district judge decided that the action

would not lie in the name of the state, on the relation of the attorney-general. The plaintiff brought this ruling here on error. Since it has been pending in this court the officers of the district have filed a written request and order that the case be dismissed. It is obvious, that this interference on the part of the state is unnecessary for the protection of any rights. It is not a case where, but for the intervention of the state, an irremediable wrong will be perpetrated. Conceding the bonds to be void, each and every taxpayer has ample protection by an action of injunction. Nor is a multiplicity of suits necessary. The tax, as a tax, being illegal, all the taxpayers may unite in a single action. *Hudson v. Comm'rs of Atchison County*, 12 Kas. 140. It is apparent too, that no action of the corporation, the school district, is sought to be prevented. It is not even a party to the suit. So far as the bonds are concerned, the school district issued them long ago. So far as any levy of taxes is concerned, that has already been done. All that now remains is, the action of the ministerial officer, the treasurer, in collecting the taxes, and the subsequent payment of the bonds. It is clear too, that there is no express warrant in the constitution or the statutes for such an action on the part of the attorney-general. The constitution is silent as to the powers and duties of that officer. (Const., art. 1, §§ 1 and 14.) The statute defining his duties grants no such power, imposes no such duty. (Gen. Stat. pp. 986, 987.) If such power exists it must be by virtue of the general power of the state to supervise and control the action of all corporations and officers, and the fact that the attorney-general is the general law-officer of the state. While in a certain sense it may be true, that the state has a supervision and control over all its corporations and officers, yet to conclude therefrom that it is either the duty or the privilege of the attorney-general to interfere in the case of every illegal act of a corporation, or officer, would be a deduction both novel and startling. Actions of *quo warranto* may be brought by the attorney-general against both officers and corporations for ouster and forfeiture. (Laws of 1871,

p. 276, §§ 1, 2.) In the fourth clause of this first section it is expressly provided, that the action may be brought "when any corporation abuses its power, or exercises powers not conferred by law." It may not however follow from this that *quo warranto* is the only remedy. It cannot be maintained by one who has no other interest than as a citizen and taxpayer. *Miller v. Town of Palermo*, 12 Kas. 14. If the wrong is of a public nature, affecting the community in general, the state through its proper officers can alone maintain the action. Mandamus will lie at the instance of the attorney-general when the duty sought to be compelled is one of a purely public nature. *Bobbitt v. Dresher*, 10 Kas. 9. It will not under the same circumstances lie at the instance of a mere citizen and taxpayer. So too, we think the process of injunction may be invoked by the state in any proper case. Indeed, we know of no reason why the state may not avail itself of any of the writs and processes of the law available to individuals for the enforcement of rights, and the redress of wrongs. So that the form of the action is no objection, if the right exists in the state to interfere. It is obvious that the state as a state has no direct interest in this controversy, any more than in a controversy between individuals. The payment of these bonds may be illegal, but their payment works no greater wrong to the state than the payment by a single individual of an illegal debt. The single individual may if he chooses by appealing to the ordinary proceedings of the law protect himself against such illegal payment. So may the many taxpayers. The case of *The State v. County Court*, 51 Mo. 350, is cited as authority. There, by a divided court, the right of the state was sustained to interfere by injunction to restrain the county court from issuing bonds in pursuance of an illegal subscription, and the officers and collector from levying, assessing and collecting taxes to pay interest or principal of some of the bonds already issued. In reference to the levy it appeared that the county court had included the tax in the general county taxes, so that it could not be separated, and the tax-

16—15 KAS.

payer could not tell what part was legal and what illegal. The general doctrine was laid down, that "it is competent for the state, at common law, through its officers to maintain proceedings by injunction, to restrain public corporations from doing acts in violation of the constitution and laws of the state." It would seem from the opinion of the court, given by SHEPLEY, special judge, that the action would not have been sustained if the bonds had already been issued, the tax levied, and so levied that the taxpayers by a single action could have protected themselves. Two cases are referred to in the opinion as containing full discussions of the principles involved, one that of *Davis v. The Mayor of N.Y.*, 2 Duer, 663, in which Judge DUER reached the conclusion that in an action "brought by two taxpayers against the mayor and others to restrain the construction of a street and railroad upon Broadway, for the doing and operating of which the municipal authorities of the city had given authority," the attorney-general was a necessary party; and the other, that of the *Attorney-General v. Minur*, 2 Lansing, 396, in which Judge MULLEN concludes, that the only cases in which "the attorney-general was authorized to interfere to restrain corporate action, or was a necessary party to an action for that purpose, were those in which the act complained of would produce a public nuisance, or tend to the breach of a trust for charitable uses." We have referred to these three cases, not as covering the exact question before us, but as containing full discussions of the general question of the right of the state to interfere by injunction to restrain apprehended wrong on the part of public corporations and officers. For in this case, as already noticed, corporate action has ceased, and the interference of the state is sought to restrain a ministerial officer, and that not an officer of the corporation, from discharging the ordinary duties of his office, although those duties are based partially upon the prior illegal corporate action, when the individuals affected thereby have complete and adequate remedy without multiplicity of suits, and by a single action. No authority to which we have been

referred has gone so far as to sustain such an action; and we think the same cannot be maintained. As private citizens, unless specially authorized, may not interfere to compel the performance of a mere public duty, or restrain the doing of a mere public wrong, so the state, having no direct interest, may not interfere to protect individuals from the illegal acts of a public officer where such individuals have, in the ordinary course of the law, ample and adequate means of protection.

The judgment of the district court will be affirmed.

KINGMAN, C. J., concurring.

VALENTINE, J.: I concur, with some doubts, in the decision of this case. For, while under the circumstances of this case eminent justice has been done by the decision, yet, at first view, I thought there might be cases where such a decision might allow manifest injustice to be done. Thousands of bonds for various purposes have been issued in different portions of this state, within the last six or eight years, illegally, fraudulently, flagrantly, perfidiously, and in many cases where all the local officers who would have the power to commence an action to have such bonds declared void are interested in having them held valid, and where the individual taxpayers of the locality have no adequate remedy. But after a careful consideration of the question, I have come to the conclusion that the decision in this case will not prevent the attorney-general from prosecuting an action in the name of the state to prevent a public injustice that could not otherwise be avoided.

Judgment affirmed.