THE CITY OF ARGENTINE *et al.* v. THE STATE OF KANSAS, *on the relation of Thomas H. Pollock, County Attorney.*

1. CITY HALL, *Authority to Erect.* A city of the second class is authorized to purchase a site, and erect thereon a city hall necessary for the accommodation of its officers and the transaction of its business.

2. MAYOR AND COUNCIL *May Purchase City-Hall Site.* The expediency and wisdom of purchasing a site and constructing such a building are to be determined by the mayor and council, and as a general rule the courts cannot interfere with their discretion, either in the selection of the site, or the time when such a building shall be erected; and the fact that the city already owns a lot which was acquired as a site for a city hall, which may be unsuitable and inadequate, will not preclude it from purchasing another.

3. CITY PROPERTY, *Sale of.* A city has express authority to sell its real property; and, when it is determined to be expedient and necessary to do so, the mayor and council may dispose of the same at such time and upon such terms of payment as they deem most conducive to the interests of the city.

4. ——— *City Hall Site—Purchase.* A site for a city hall may be purchased by a city in pursuance of an ordinance passed for that purpose, although no ordinance has been enacted specifically providing for the construction of the building.

5. Site, *How Paid for*. The mayor and council may purchase a site for a city hall without being instructed to do so by a vote of a majority of the electors, and may pay for the same out of any money provided specially for that purpose, or out of any unexpended money belonging to the general fund of the city.

6. Injunction, *Not Maintained by the State*. In a petition filed in behalf of the state, it is alleged that the mayor and council of the city of A. had provided by ordinances for the purchase of a site for a city hall, and to pay for the same; that, professing to have been instructed by a vote of the people, they had issued, negotiated and sold the bonds of the city in the sum of $10,000 to construct a building to be known as the "City Hall," and to furnish offices for the various officers of the city, and received for the bonds so negotiated and sold the sum of about $10,000, which amount was then in the hands of the city treasurer. The bonds are alleged to have been illegally issued; but what the defects were, or whether they were good in the hands of innocent holders, was not stated. It was further alleged, that the mayor and council proposed to expend $1,600 of the proceeds of the sale of the bonds for the purchase of certain lots upon which to construct the city hall, and the state asked that the city and its officers be enjoined from expending the money for that purpose. *Held*, Upon a demurrer, that the allegations of the petition do not disclose such an interest in the public as would authorize the state to maintain the action.

### *Error from Wyandotte District Court.*

Action of injunction, brought in the name of *The State* by the county attorney of Wyandotte county, to enjoin the city of Argentine, and the mayor and council thereof, from appropriating or expending any portion of the proceeds of the sales of city bonds issued for the purpose of building a city hall in the city of Argentine in the purchase of lots upon which to erect such hall. The following is a copy of the amended petition filed by the state:

"The plaintiff, for cause of action against the defendants, alleges and shows to the court:

"1. The defendant the city of Argentine is a public corporation organized under the laws of the state of Kansas as a city of the second class; the defendant William McGeorge is the mayor of said city, and the other defendants [naming them] are the councilmen of said city.

"2. On the 24th day of November, 1890, the said mayor and councilmen of the said city of Argentine enacted two cer-

tain ordinances, numbered respectively 263 and 264, copies of which said ordinances are hereto annexed, marked respectively exhibits 'A' and 'B', and made a part of this petition.

"3. On or about the 1st day of May, 1890, the mayor and councilmen of said city of Argentine, pretending and professing to act under and pursuant to ¶ 792 of the General Statutes of Kansas of 1889, being § 35 of 'An act to incorporate cities of the second class, and to repeal former acts,' approved February 28, 1872, and pretending and professing to have been instructed so to do by a majority of all the votes cast at an election held in said city for that purpose, did issue, negotiate and sell the bonds of said city in the sum of $10,000 for the purpose of constructing a building to be known as a 'city hall,' and to furnish offices for the various officers of said city, and did receive for said bonds so negotiated and sold the sum of about $10,000, which sum of money is now in the hands of the treasurer of said city of Argentine.

"4. The said mayor and councilmen of the said city of Argentine have denominated said fund so received from the sale of said bonds as 'the city hall building fund of the city of Argentine,' and by said ordinances Nos. 263 and 264 are attempting to and threaten to appropriate, use and expend $1,600 of the proceeds of the sale of said bonds for the purchase of lots 1, 2, 3, and 4, in block 2, Meyer's addition to the city of Argentine, mentioned and described in said ordinances, and unless restrained from so doing by this court, will immediately proceed to use, appropriate and expend said money for the purpose of purchasing of said lots.

"5. At the time of the issuing, negotiation and sale of the aforesaid bonds, the said city of Argentine was and now is the owner of a lot or tract of land theretofore acquired by it as a site for a city hall; said mayor and councilmen have not been instructed, by a majority of all the votes cast at any election held in said city of Argentine for that purpose, to borrow any money, to issue any bonds, or to make any appropriation whatever for the purchase of a new site for a city hall, or to construct a city hall; and no ordinance or resolution providing for the construction of a city hall or making an appropriation therefor has been enacted by said city, nor has any estimate of the cost of such work or improvement been made by the city engineer and submitted to the council of said city; and said mayor and councilmen have no authority in fact or in law to use, appropriate or expend any portion of the moneys received as the proceeds for the sale of said bonds in the pur-

chase of said lots, or for any other purpose, or to make any expenditure for the purchase of a site for, or for the construction of, a city hall.

"Wherefore plaintiff prays that said defendants and each and every of them may be restrained and enjoined from appropriating, using or expending any portion of the proceeds of the sale of said bonds so issued for the purpose of building said city hall in the purchase of said lots hereinbefore described, or for any other purpose, and for such other and further relief as in equity it may be entitled to."

The ordinances referred to in the petition were, first, one authorizing the mayor, as the agent of the city of Argentine, to purchase four lots in the city as a site for the city hall, at the price of $1,600, which was approved November 25, 1890, and duly published on November 27, 1890. The second ordinance referred to is one appropriating $1,600 in payment for the lots purchased as a site for the city hall. This ordinance was approved on November 25, 1890, and was duly published. A temporary injunction was granted, after a hearing upon the amended petition, and immediately thereafter the city and its officers filed a general demurrer to the amended petition, which was argued and overruled. The defendants elected to stand upon the demurrer, and judgment was entered for the plaintiff, granting a perpetual injunction. The defendants excepted, and bring the case here for review.

*Thos. J. White*, for plaintiffs in error.

*J. N. Ives*, attorney general, and *Hutchings & Keplinger*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The question for determination is the sufficiency of the petition. Do the facts alleged authorize the interference of the state by a proceeding of injunction? It appears that the city of Argentine is proposing to purchase a site upon which to erect a city hall, in order to provide office rooms for the various officers of the city. An ordinance has been enacted authorizing the mayor to purchase four certain

28 — 46 KAS.

lots for that purpose at the specified price of $1,600, and another ordinance was enacted appropriating that sum to pay for the site. A fund of about $10,000 has been provided for the construction of a city hall, and the mayor and council are proposing to use a portion of this fund to pay for the site. It is said that their action is unwarranted, because the city is without power to purchase such a site; but there is no ground for this contention. Express authority is given a city of the second class to purchase and hold real estate for the use of the city, and to sell and convey any which it owns, and to make such orders respecting the same as may be conducive to the interests of the city. (Gen. Stat. of 1889, ¶ 759.) Then there is the further provision empowering the council to purchase grounds for and to erect market houses and all other necessary buildings. (Gen. Stat. of 1889, ¶ 813.) It is proper for the city to provide a public building for the accommodation of its officers, and, as we have seen, abundant authority is expressly given to purchase real estate, and to construct a public building thereon. The wisdom and expediency of purchasing a site and constructing a building are to be determined by the mayor and council, and, as a general rule, the court cannot interfere with their discretion, either in the selection of the site or the time when such a building shall be constructed.

1. City hall, authority to erect.

2. Mayor and council may purchase city-hall site.

The objection that the city already owns a lot which was acquired as a site for a city hall is not good. Authority is vested in the city, as we have seen, to sell any real property which it owns. A site or building which is suitable and sufficient at one time may by the growth of the city become entirely unsuitable and inadequate. The expediency of selling the real estate which the city owns, and purchasing another location deemed to be more convenient and suitable, is to be determined by the mayor and council, and not by the court. When they determine that it is expedient and necessary to construct a city hall and to purchase a new site therefor, there is no reason why they may not proceed to do so before the

old one is sold and disposed of. The city is authorized in general terms to sell real property, without specification as to
3. City property, sale of. time or manner. It may, therefore, dispose of the same at such time and upon such terms of payment as may be deemed most conducive to the interests of the city. (*City of Wyandotte v. Zeitz*, 21 Kas. 660.)

It is contended that if the statutory authority referred to carries the power to purchase a site for a city hall, then before a new site can be purchased it must appear that a new city hall is to be built, and an ordinance must be enacted for that purpose. In reply to this it may be said, that the enactment of the ordinances, providing for the purchase of and payment for the lots for a new site was practically a determination that a new city hall was to be erected. Even if it were not, the purchase of a site is a necessary preliminary before proceeding
4. City hall site —purchase. with the construction of the building; and until the purchase is effected, an ordinance providing for the construction does not seem to be absolutely necessary. When the location is determined and the site procured, the mayor and council may thereafter exercise their discretion and provide by ordinance the time and manner of constructing the building.

The objection that there has been no vote instructing the mayor and council to purchase a site or to construct a city hall, is not material. The statute prescribes no such requirement. If bonds are to be issued or money borrowed for making an improvement of a general nature, a vote of a majority of the electors is necessary. (Gen. Stat. of 1889, ¶ 792.) This provision however, applies only where bonds are to be issued or money borrowed, but it is not absolutely essential to the purchase of a site or the determination to construct a necessary public building. For these purposes authority is given elsewhere; and if there is sufficient money in the treasury belonging to
5. Site, how paid for. the general fund, it may doubtless be appropriated to pay for the same. As has already been said, the purchase of necessary real estate and the construction of public buildings rests in the discretion of the city officers, and

in the absence of fraud or some statutory restriction, the courts cannot interfere.

According to the allegations of the petition, the city had on hand a city hall building fund of about $10,000, which appears to have been derived from the issue and negotiation of bonds issued in pursuance of an election; but it is averred that the officers have never been instructed by a majority of the votes cast to issue the bonds for the purchase of a site or the erection of a hall, and it is therefore contended that the city cannot appropriate or expend any portion of the proceeds of these bonds, either for the purchase of a site or the erection of the building. It is not alleged that the site which has been purchased is in an inconvenient location, nor that the price paid for the same was excessive, nor yet that there was any fraud connected with its purchase; neither is there any statement that the officers corruptly issued or negotiated the bonds, nor that they were sold for less than their value. From the allegations that are made, it must be taken that the bonds were illegally issued; but whether they were void on their face, or whether they had passed into and were good in the hands of innocent holders, is not alleged. Whatever may have been the defects in the election proceedings preliminary to the execution and sale of the bonds, it appears that they have been issued, negotiated, and sold, and the proceeds of the same are now in the hands of the city treasurer. No complaint is made of the proposed expenditure either by the city or any tax-payer of the city, and why should the state or the county attorney in its behalf intervene? It is contended by the state that, if the bonds that have been illegally issued are valid in the hands of *bona fide* purchasers, or if the bonds are held to be void, the funds derived from the same in either event belong to the city, and, as we have seen, the right of the city to expend money for the purchase of real estate and the construction of public buildings is undoubted. Under the allegations of the petition and the previous rulings of this court, the interference on the part of the county attorney in behalf of the state is unnecessary to prevent the perpetration

of an irremediable wrong, and unwarranted by law.    In
*The State, ex rel., v. McLaughlin,* 15 Kas. 228, a school dis-
trict had issued bonds in excess of its powers, which were
void in the hands of their holders, and a tax had been levied
to pay them off, and it was held that an action to enjoin the
collection of taxes to pay the bonds would not lie in the name
of the state on the relation of the attorney general.    *City of
Atchison v. The State,* 34 Kas. 379, was an action brought by
the state in the name of the county attorney against the city
of Atchison and others, to enjoin the city of Atchison and cer-
tain officers from collecting taxes or paying out certain bridge
funds which were in the hands of the treasurer.    It was al-
leged that bonds issued to build certain bridges in the city
were illegally issued, and that the tax levied for the payment
of the bonds was illegal and void, and the plaintiff asked the
court to enjoin the disbursement of the money collected upon
the levy; but it was held that as the bonds alleged to be un-
authorized and illegal had long since been executed and de-
livered, and the bridges for the payment of which the bonds
were issued had been built and paid for, the community at
large had no such interest in the controversy as warranted the
interference of the state.    So here the bonds have been exe-
cuted and issued without objection or interference by the state
or anyone else; they have passed into the hands of the pur-
chaser, and their validity, as between the holders and the city,
cannot be tried in this proceeding; nor, indeed, does it appear
that the city, or any officer or tax-payer of the city, desires to
question the validity of the bonds.    The money derived from
their sale is in the hands of the treasurer, and if it is treated
as a special fund to provide a city hall, the expenditure of the
same for the purchase of a site is not unauthorized; and if the
bonds are void on their face, so that the proceeds cannot be
recovered, then such proceeds would become a part of the gen-
eral fund, and might be legally appropriated for the purchase
of a site or the construction of the building.    In either case
the right of the state to interfere with the city in the appro-
priation of the fund is not apparent.    From the argument of

counsel, it would seem that the principal objections to the appropriation have been the location of the site, and the supposed want of power in the city to purchase the site, but neither of these objections can be sustained; and, so far as the question of expending the money which the city has provided for that purpose is concerned, we must hold, under the authorities, that the public has no such interest in the same as will warrant the interference of the county attorney. As the site is essential to the construction of the building, we think the money provided for the building may properly be used for the purchase of the site. We are also of opinion that an estimate of the cost of the site by the city engineer is not essential or required in advance of a contract of purchase by the city council.

*6. Injunction, not maintained by the state.*

The judgment of the district court will be reversed, and the cause remanded with instructions to sustain the demurrer of the city to the petition of the state.

All the Justices concurring.