Bank of Topeka v. Majestic Fire Ins. Co.

No. 26,740.

THE BANK OF TOPEKA (THE STATE OF KANSAS, ex rel. C. B. GRIF-
FITH, Attorney-general, Intervener, *Appellant*) v. THE MAJESTIC
FIRE INSURANCE COMPANY, ELMER F. BAGLEY and HENRY C.
SMITH, *Appellees*.

SYLLABUS BY THE COURT.

CORPORATIONS—*Stock Fraudulently Procured by Officers—Right of State to In-
terfere*. In an action by creditors to wind up the affairs of an insolvent
corporation and to distribute its assets among the creditors and stockholders,
the state has no such interest as will entitle it to object to the allowance
of the claims of holders of stock alleged to have been fraudulently procured
by them from other stockholders by means of their advantageous positions
as officers of the corporation.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE,
judge. Opinion filed November 23, 1925. Affirmed.

*C. B. Griffith,* attorney-general, and *John G. Egan,* assistant attorney-gen-
eral, for the appellant.

*A. R. Buzick, Jr., W. S. Norris,* both of Salina, *Bennett R Wheeler, S. M.
Brewster* and *John L. Hunt,* all of Topeka, for the appellees.

*D. R. Hite,* of Topeka, for The Bank of Topeka.

The opinion of the court was delivered by

HOPKINS, J.: This controversy presents the question whether the
state, on the relation of the attorney-general, may prevent the pay-
ment to the president of an insolvent corporation of claims of other
stockholders held by him, the assignment of which had been ob-
tained by fraud.

The defendant is a capital-stock fire insurance company organized
under the laws of this state. Plaintiff commenced this action against
it June 11, 1925, to recover on notes amounting to $15,596.92. The
same day it procured the appointment of a receiver for the company.
On June 30 following, the state filed an intervening petition, alleg-
ing, among other things, that the suit was an attempt to distribute
the assets of the company among the creditors and stockholders
without protecting its policyholders. On September 14, 1925, the re-
ceiver filed a motion to confirm previous reports allowing claims.
On September 18 following the state filed objections to the allowance
of the claims of Elmer F. Bagley and Henry C. Smith covering stock

Corporations, 14a C. J. § 3276.

procured by them from other stockholders on the ground that they had fraudulently procured assignments of such stock for approximately $15 per share, when in fact it had a value of $75 per share; that Bagley, while president and director of the company, had procured 312 shares of such stock from various small stockholders scattered throughout the state and expected to reap a profit of $18,000 in the transaction; that Smith had obtained an assignment of a large block of stock from one J. Costello, who had procured it in like fraudulent manner as had Bagley. The court overruled the state's objections to the allowance of the Bagley and Smith claims, entered judgment decreeing a dissolution of the company, and distribution of its net assets to its stockholders. The state appeals, contending that the Bagley and Smith claims should not be recognized in the distribution of the assets because procured by fraudulent methods.

The state argues that he who comes into equity must come with clean hands; that the directors and managing officers of a corporation are quasi trustees for the stockholders; that it is the duty of such officers to give correct information concerning the stock and the condition of the corporation to the stockholders from whom they seek to purchase stock. The argument is sound and supported by substantial authority. (*Stewart v. Harris*, 69 Kan. 498, 77 Pac. 277; *Bushey v. Coffman*, 103 Kan. 209, 173 Pac. 341; *In re Lansaw*, 118 Fed. 365; *In re Friedman*, 164 Fed. 131; *Kitchen v. Rayburn*, 86 U. S. 254; 16 Cyc. 144, 145; 21 C. J. 180, *et seq.;* Note, 4 A. L. R. 44, *et seq.*) The difficulty lies in applying it to the present situation. The restriction placed upon the officers and directors of corporations in their dealings with stockholders is that their conduct shall be fair, open and above reproach. (*Stewart v. Harris*, supra.) Fraudulent representations in the sale of stock are actionable. (*Bushey v. Coffman*, supra; *Shriver v. National Bank et al.*, 117 Kan. 638, 232 Pac. 1062.) The state, however, had no such interest as would entitle it to object to the allowance of the claims. The assignors of the stock alone could object.

A contract procured by fraud is not necessarily void. It is voidable. Until the defrauded party elects to rescind it is valid and binding.

In 13 C. J. 394, 395, it is said:

"On discovering the fraud by which he was induced to enter into a contract, the party defrauded may elect whether he will treat the contract as binding or refuse to be bound by it; but until he so elects it continues valid. An agreement procured by fraud is voidable and not void. . . . When a party

has been induced to enter into a contract by false and fraudulent representations, he has several remedies. He may affirm the contract, keeping what he has received under it, and maintain an action to recover the damages which he has sustained by reason of the fraud, or he may set up such damages as a defense or by way of counterclaim, if sued on the contract by the other party. Affirmance of the contract is not a waiver of the fraud and does not bar the right to recover such damages, but merely bars a subsequent rescission. Instead of affirming the contract the party defrauded may, subject to the limitations hereafter stated, rescind the contract, and pursue the remedies based on such a rescission."

As title to the stock passed to Bagley, his claim was properly allowed, unless the assignors themselves claimed it was wrongfully procured. The assignors might offer to rescind by tendering to Bagley the amount received for the stock, or they might sue in damages to recover their loss. They only could complain. The attorney-general cannot supervise all contracts of sale between citizens of the state. (See *State, ex rel., v. McLaughlin,* 15 Kan. 228; *Attorney-general, ex rel., v. Albion Academy,* 52 Wis. 469; *People v. O'Brien,* 111 N. Y. 1; *People v. Ingersoll,* 58 N. Y. 1; *Attorney-general v. Clark,* 167 Mass. 201; *People v. Booth et al.,* 32 N. Y. 397.)

The judgment is affirmed.