No. 38,698

THE STATE OF KANSAS on the relation of Kenneth V. Moses, County Attorney of Marshall County, Kansas, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF MARSHALL COUNTY, KANSAS: Harry Warren, Chairman of said Board; Ted Dolen, Member of said Board; C. R. Conger, Member of said Board; Manilla Prebble, Clerk of said Board; and Hugh G. Havens, Treasurer of Marshall County, Kansas, *Defendants*.

(242 P. 2d 527)

Opinion filed March 28, 1952.

*Kenneth V. Moses*, of Marysville, argued the cause and was on the briefs for the plaintiff.

*Robert E. Ferguson*, of Marysville, argued the cause and was on the briefs for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an original action in quo warranto to oust the defendant board of county commissioners and the county clerk and the county treasurer of Marshall county from incurring obligations against and expending funds raised by tax levy under G. S. 1949, 39-364. The defendants have answered. The parties have entered into an agreed statement of facts and the case has been submitted to us for final determination.

After alleging the identity of the parties, the petition alleged that acting pursuant to G. S. 1949, 39-364, the defendant county commissioners made an annual levy for the year 1949 of one mill upon all tangible property of Marshall county and the sum of $42,477.25 was raised and with the same levy for 1950 $48,477.25 was raised and this amount in aggregate $90,903.22 was in the hands of the defendant county treasurer. The petition then quoted G. S. 1949, 39-364, as follows:

"That the board of county commissioners of any county in the state maintaining a county farm home and having a population of more than 18,000 and less than 20,000 persons, and having an assessed valuation of more than $40,000,000 is hereby authorized to make an annual levy for two years not to exceed one mill each year upon all taxable property of the county for the purpose of creating a fund for remodeling or rebuilding the present county farm home. Such levy shall be in addition to and outside of any limitation or aggregate limit fixed by law."

It alleged this section was enacted in the 1949 session of the legislature and became effective on April 2, 1949, and at that time only one county in the state besides Marshall had a population of 18,000 to 20,000 and an assessed valuation classification of over $40,000,-000, and maintained a county farm. The petition further alleged there were thirty-two counties in the state maintaining county farms in 1949 and 1950; that no counties in the state other than Marshall had attempted to establish the funds provided for under G. S. 1949, 39-364. The petition then alleged the section was enacted at the special instance of the board of county commissioners from Marshall and was repealed at the session of 1951 and while it was in force no counties except Marshall and Ford could have used it and since its repeal no other county could use it. The petition quoted G. S. 1949, 39-714 and G. S. 1949, 19-1503. These sections will be referred to later on in this opinion. The petition alleged those sections were in effect when G. S. 1949, 39-364, was enacted, and one section

provided for the erection of a county home and one for the erection of county buildings and they were general laws under which funds for such purpose could have been raised if a majority vote had been cast in favor thereof. The petition also set out G. S. 1949, 79-4001, which will be included herein later, and alleged it was a general law under which such funds could have been raised if a majority vote had been cast in favor thereof. The petition then quoted article II, section 17, of the constitution of Kansas as follows:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The petition then alleged that by reason of all of the foregoing sections, G. S. 1949, 39-364, was a special revenue law enacted at the request of the defendant board for the benefit of all counties falling within the required population bracket; that at the time of this enactment all counties maintaining county farm homes could not be benefited by its provisions for the reason that a great majority of them did not belong to and could not reasonably be expected to eventually come within the limitations on population and assessed valuation; that Marshall was the only county which had received benefit from the section; that Ford county could not be benefited nor could any other county because of the repeal and that general laws were in effect at the time under which the raising of funds for rebuilding and remodeling the present county farm homes could have been raised; that by reason of all of the above G. S. 1949, 39-364, was repugnant to article 2, section 17, of the constitution. The petition then alleged that the defendant board was about to enter into a contract for the construction of a county farm home and to incur obligations for its erection and to pay for it out of moneys raised under G. S. 1949, 39-364; that unless the defendant was ousted from entering into any such contract or in any way attempting to obligate the county to pay claims out of the funds raised by virtue of G. S. 1949, 39-364, irreparable injury would be done to the county and to third persons who might extend benefits to the county in such construction. The prayer of the petition was as follows:

". . . plaintiff prays that the Court declare Section 39-364 of the General Statutes of Kansas of 1949 to be repugnant to Article II, Section 17 of the Constitution of Kansas; that defendant Board of County Commissioners of

Marshall County, Kansas, be ousted from entering into any contracts, or incurring any obligations on behalf of said County, for the expenditure of the sums raised by levies made under said Section; and that the defendant Treasurer of Marshall County be ordered to refund said sum raised to the taxpayers paying the same, and for such other and further relief as is just and equitable in the premises."

The defendant answered admitting the levy and denying that the section was a special revenue law and that it was repugnant to the constitution and alleging that the board of county commissioners brought to the attention of the legislature the need for such a law and that it was enacted under the guidance of the county attorney of Marshall county and the attorney general; that the county commissioners had negotiated with low bidders and intended to proceed immediately to take advantage of the lower cost of critical materials to rebuild the present county farm.

The answer further alleged that no taxpayers had made any protest at the time of paying the tax or any portion thereof and that no litigation for the recovery of any amount was pending; that by reason of the premises the board might by law enter into contracts and incur .obligations for the expenditure of the sums raised; that the plaintiff's prayer to declare G. S. 1949, 39-364, unconstitutional should be denied first on the ground that it was not repugnant to the constitution and for the further reason that the question raised was moot and there was no foundation for an order directing the defendant treasurer to refund the sums raised and paid into his hands without any protest from any taxpayer or any other person for the purpose of the levy.

The parties entered into an agreed statement of facts as follows:

"1. Pursuant to Section 39-364 of the General Statutes of Kansas of 1949, the Board of County Commissioners of Marshall County, Kansas, levied a one mill tax on all the tangible property in each of the years 1949 and 1950.

"2. The sum of $42,425.97 was paid into the office of the Treasurer of Marshall County, on the 1949 levy and the further sum of $48,477.25 was paid into the office of the Treasurer of Marshall County, Kansas, for the year 1950. That said total sum of $90,903.22 is in the hands of the defendant Hugh G. Havens, Treasurer of Marshall County, Kansas, in a fund designated as 'Marshall County Home Building Fund.'

"3. That all of the sum of $90,903.22 paid in by the taxpayers on the 1949 and 1950 levies was paid without protest or complaint by anyone. That no litigation for the recovery of any amount was pending at the date of the filing the quo warranto action herein. That no objection has been made at any time subsequent to the payment of any of said money under said levies for said purpose.

"4. That county homes were maintained by the following counties in the State of Kansas for the year 1949 and 1950:

| | | |
|---|---|---|
| Allen | Franklin | Mitchell |
| Atchison | Greenwood | Montgomery |
| Barton | Jackson | Nemaha |
| Bourbon | Jewell | Osage |
| Brown | Johnson | Pawnee |
| Cherokee | Labette | Rice |
| Cowley | Leavenworth | Sumner |
| Crawford | Lincoln | Wilson |
| Douglas | Lyon | Wyandotte |
| Elk | Marshall | |
| Finney | Miami | |

"That Marshall County had the only actively maintained county farm home in the classification designated in Section 39-364 of the General Statutes of Kansas of 1949.

"5. That no other counties in the state established this fund or made a levy under said statute other than Marshall County, Kansas. That said statute was repealed by the 1951 Legislature of the State of Kansas, by Chapter 287, Section 1 of the 1951 Session Laws. That at the time of passage of said statute the following sections of General Statutes of Kansas of 1949 were among those in effect: 39-714; 19-1503; 79-4001.

"6. That the parties named plaintiff and defendant are the duly elected, qualified and acting officers in their respective capacities named in the caption of plaintiff's petition.

"7. That the defendant Board of County Commissioners are about to enter into contracts for remodeling or rebuilding of said Marshall County farm home and use of funds which have been paid under the 1949 and 1950 levies.

"8. That counsel for plaintiff has made inquiry of the county attorneys of various counties in the State of Kansas maintaining county farm homes, and has found that in the following counties the expenses and costs of repair work on the county farm home has been paid for out of the social welfare fund, to wit:

| | |
|---|---|
| Jewell County | Jackson County |
| Labette County | Barton County |
| Pawnee County | Wyandotte County |
| Crawford County | Miami County |
| Montgomery County | Lyon County |

"That Wilson county maintains a small levy to build up a maintenance fund for the county farm home.

"That the following counties have not had the problem of remodeling presented in recent years, to-wit:

| | |
|---|---|
| Bourbon County | Sumner County |
| Franklin County | Nemaha County |
| Cowley County | |

"That Ford County does not maintain a county farm home.

"That in the year 1951 Finney County and Cherokee County discontinued maintaining a county farm home. That Finney County leased the same to a private party for the purpose of running a convalescent home, and with an

agreement that they would care for the counties patients as a part of their contract.

"That Brown County is remodeling its county farm home out of part of the county farm sold under Chapter 20, of the Session Laws of 1951.

"9. That Mr. Hart Workman, Chief Legal Counsel for the State Board of Social Welfare of Kansas has stated by affiavit filed herein on behalf of defendants as follows, to-wit:

"STATE OF KANSAS, SHAWNEE COUNTY, ss.:

"Hart Workman, of lawful age, being first duly sworn upon his oath, deposes and says: (1) He is the Chief legal counsel of the State Department of Social Welfare. (2) That as such legal counsel he is familiar with the laws governing the State Department of Social Welfare, and that he has given particular study to Section 39-364 of the 1949 Revised Statutes of Kansas. That in the study of Section 39-364 it is his opinion that only the counties in the classifications set forth in said section had need for remodeling or rebuilding the county farm homes to meet necessary standards qualifying the inmates therein as eligible for categorical assistance. That said Department of Social Welfare found that in 1949 the other counties maintaining a county farm home had different problems to qualify for such categorical assistance in that the needs of counties in other classifications required either a change in personnel and—or repair work only on the physical plants. That the categorical assistance for which the inmates would be eligible on counties qualifying with the correct physical plant and personnel were those items set forth and allowed with federal assistance under Public Law 271, 74th Congress (H. R. 7260), and Article VII, Chapter 30 of the 1949 Revised Statutes of Kansas. The ordinary repair work or a difference in personnel could not bring the county farm homes maintained in said classification of Section 39-364 in a group where the inmates in said county homes would be eligible for said categorical assistance without major remodeling or rebuilding."

Plaintiff argues first that G. S. 1949, 39-364, is repugnant to article II, section 17, of the constitution. It relies amongst other authorities on *Panhandle Eastern Pipe Line Co. v. Miami County Comm'rs*, 151 Kan. 533, 99 P. 2d 828, also the recent case of *Missouri Pacific Rld. Co v. Board of County Comm'rs*, 172 Kan. 80, 238 P. 2d 462. Were this a case where a taxpayer had paid his taxes under protest and brought action to recover them, as the Missouri Pacific did in the above case, our question would be much simpler. At it is, however, these taxes were all paid voluntarily. No taxpayer made any complaint or brought any action up to now. The time for making such a protest or bringing such an action has long since passed. It is well settled that taxes paid voluntarily may not be recovered.

The earliest case is *Phillips v. Jefferson* Co., 5 Kan. 412. There the plaintiff had paid money to redeem land from a tax sale. He claimed this land was not taxable. This court held the land was

not taxable but the payment was voluntary. We pointed out that had plaintiff desired to litigate the question he could have done so without paying the money. The holding was that the plaintiff was not entitled to recover. The matter of paying taxes under protest is provided for in G. S. 1949, 79-2005. That section provides first the protest must be filed at the time the taxes about which the protest is made are paid; that the county treasurer shall disburse the amount of taxes not paid under protest and shall impound in a separate fund all portions of the taxes that are protested; that the taxpayer shall within thirty days of the protest, either commence an action in court or file an application with the state tax commission for a hearing; that if the taxpayer shall fail to file such application with the tax commission or to commence such action, such protest shall become of no effect and the county treasurer shall disburse the impounded tax money; and no action shall be maintained for the recovery of any taxes paid under protest unless it is commenced within thirty days after the filing of the protest. *Henderson v. Montgomery County Comm'rs,* 147 Kan. 64, 75 P. 2d 816, was a case where an action was brought to recover taxes that had been paid under protest. The trial court denied relief because the protests were not sufficient. We affirmed. The opinion is authority for a holding that G. S. 1949, 79-2005, must be carefully followed before an action may be brought to recover taxes paid. Clearly then where no protest at all is made no action may be maintained. (See *Fischer v. Pottawatomie County Comm'rs,* 122 Kan. 662, 252 Pac. 901.)

The prayer of the petition is threefold: (1) it asks us to hold G. S. 1949, 39-364, to be unconstitutional; (2) it asks us to oust the. county officers from entering into any contract to spend the money in question; and (3) it asks us to order the county treasurer to refund the taxes paid under the levy in question to the taxpayers who paid it.

The question of whether the section is unconstitutional could very well be held to be moot. The act became effective on April 2, 1949. It authorizes levies for two years and two years only. Levies were made for 1949 and 1950. The act by its own terms expired after the 1950 levy was made. Furthermore, at the session of 1951 the act was repealed. (See chapter 287, Session Laws of 1951.)

It is well settled that we will not determine the constitutionality of a statute where it is merely an abstract question.

*Clewell v. School District,* 115 Kan. 176, 222 Pac. 74, was a man-

damus action to compel a school board to admit students to its school. The defendants alleged the statute under which plaintiffs claimed the right to attend the school was unconstitutional. Before the appeal reached this court it appeared the school year was past and the children in question had been permitted to attend. We said:

"It was the admission of the children to the high school with its benefits and privileges during the year 1922 that was sought in the action. The year has expired, the children were admitted and have had all the benefits and privileges of the school during that time and nothing is left in the case but an abstract question as to the validity of a challenged statute. The case is therefore moot. We cannot undertake to determine a constitutional question unless it is necessary to a decision of the questions involved and the determination of the constitutionality of a statute is imperatively required. It is well settled that the court will not consider and decide moot questions, questions which if decided would not be applicable to any actual controversy and where the judgment itself would be unavailing."

*School District v. City of Wa Keeney,* 107 Kan. 667, 193 Pac. 328, is to the same effect except that the validity of a city ordinance is involved rather than the constitutionality of a statute.

(See, also, *White v. Atchison County,* 109 Kan. 98, 197 Pac. 1092; also *Shoe Co. v. Dawson,* 94 Kan. 668, 146 Pac. 996 and cases cited.)

We will not consider the question of the constitutionality of a statute where we would be unable to give judgment for substantive relief should we hold the statute to be unconstitutional.

This takes us to a consideration of the next portion of the prayer where plaintiff asks us to order the officers not to expend the money raised. There is nothing unlawful about the objects for which these levies were made, that is, remodeling or rebuilding the county farm home. The county commissioners had authority to do those things. G. S. 1949, 39-714, is one statute dealing with the matter. It confers on boards of county commissioners authority to purchase land and build thereon a home for persons eligible for public assistance. It also confers on them authority to levy a tax per annum of one-tenth of a mill for that purpose.

This section also contained a provision that the provision for making the above levy should not prevent the county from issuing poor bonds, as provided by law. At that time the issuing of poor bonds was provided for by G. S. 1935, 10-203 to 10-205, inclusive. Those sections provided for an election on the question of purchasing land and erecting buildings thereon for the poor, upon presentation of a petition signed by two-fifths of the voters of any county.

They provided for the issuance of bonds for the purpose upon a majority of three-fifths of the votes cast at the election. Chapter 68 of the Laws of 1872 provided for issuing bonds for building bridges and making internal improvements. This act was amended by chapter 39 of the Laws of 1874 to include the issuance of bonds for the purpose of purchasing land and erecting buildings thereon for the poor. As amended in the session of 1874, the statute as to issuing bonds for the above purpose has come down to us as at present provided in G. S. 1949, 39-714, which, as we have pointed out, provided the power conferred on county commissioners to make a levy of one-tenth of a mill on all taxable property, to purchase land and build thereon a home for persons eligible for public assistance should not prevent the issuance of bonds, as provided by law.

Boards of county commissioners were given power to purchase land and to build thereon an asylum for the poor by chapter 79 of the General Laws of 1868, section 25. By section 29 of that act they were given authority to assess a tax on property liable to taxation sufficient to raise a revenue not to exceed $500 a year, unless the amount to be raised should be submitted to a vote of the people and a majority of the people should vote for such assessment. Those two sections are G. S. 1949, 39-324 and 39-328.

From the beginning in this state county commissioners have had authority to purchase land and build thereon a home for the poor of the county and to make a levy to raise the necessary funds. Such was the law when the levies with which we are concerned were made in 1949-and 1950. While G. S. 1949, 39-328, was in effect and limited the amount that could be raised for the purpose of buying land and building an asylum for the poor to $500, chapter 327 of the Laws of 1937 was enacted. That, as has been pointed out here, appears now as G. S. 1949, 39-714. It contains no limit as to the amount that may be raised. The only limitation is that only one-tenth of a mill may be levied. Actually all that happened when the two levies in 1949 and 1950 were made conceding G. S. 1949, 39-364, to be unconstitutional was that an excess levy was made, not a levy for some unlawful purpose, but one for a purpose for which county commissioners have had the authority to make some levy from the beginning. We have heretofore said in this opinion that had any taxpayer sought to enjoin this levy or had any taxpayer paid the amount assessed against his property under protest and then brought an action to recover, we would have a much

simpler question.   As it is, however, no action was filed, no taxes were paid under protest, and no action brought to recover the amount of taxes paid, pursuant to this levy.   The county treasurer has in his hands in a county home fund for the purpose of building a home for persons eligible for public assistance, the money raised by these levies.   The county commissioners are about to enter into a contract for the erection of such a home.   The question is, should this court issue its writ of quo warranto to oust the county commissioners from entering into this contract?    The time within which some taxpayer could have objected to these levies has long since passed.   The limitation in the statute is on the amount that might be levied.   There is no limitation in the amount that may be expended.   All these statutes, to which we have referred, gave authority to the county commissioners to purchase land and erect thereon a building without limitation.   The situation is much the same as though some generous person had made a gift of $90,963.22 to Marshall county for the purpose of purchasing land and erecting thereon a county home.   No one would think of questioning the right of the county commissioners to expend this money for the purposes mentioned.   Actually these taxpayers did, by failing to protest or to bring any action, or, as we have said in the same opinion, paying these taxes voluntarily, have, it might be said, made a gift of the amount paid to the county to be used as specified.

*Railway Co. v. City of Humboldt*, 87 Kan. 1, 123 Pac. 727, was an action to recover a tax that had been paid under protest.   We held that the tax was in excess of what could be legally levied, but since all of the taxes of the taxpayer had been paid in December, 1907, and only half was due then, the latter half could not be held to be paid under protest but was paid voluntarily and could not be recovered in the action.   We quoted *A. T. & S. F. Rld. Co. v. Comm'rs of Atchison Co.*, 47 Kan. 722, 28 Pac. 999, to sustain that view.   By analogy this case is authority here for our conclusion that quo warranto may not be used to prevent the board of county commissioners from entering into contracts to expend the money raised by these two levies for the purchase of land and the erection thereon of a county home.

We come now to the third paragraph of the prayer of the petition, that is, that we order the county treasurer to refund the money paid under the levies in question to the taxpayers who paid it.

The state by that part of the prayer is seeking relief for the tax-payers, to which they are not entitled in an action brought by them, having paid these taxes voluntarily, and to which they are not making any claim. Here we have some early decisions of this court for a guide. It is pretty generally recognized that in a public matter the action must be brought in the name of the state by either some county attorney or the attorney general. What is not so well known, however, but seems equally well settled, is that in a matter of purely private right or to redress a private wrong, the action may not be brought in the name of the state, but must be brought in the name of the individuals interested. It is but a phase of the statute that actions must be maintained in the name of the real parties in interest.

This court dealt with the question in *The State, ex rel., v. McLaughlin,* 15 Kan. 228. In that case a church society had made a contract with a school district whereby the church advanced $1,000 to the district and the district agreed when it built a schoolhouse to make arrangements for a room for the use of the church. To secure such advancement two bonds of the district were executed and handed to the church. When the bonds matured a tax was levied to pay them and the county treasurer had possession of the tax roll and was proceeding to collect the tax. The action was brought by the attorney general to restrain the county treasurer from collecting them. We said—

"The case is rested upon the naked proposition that the contract, being *ultra vires* of the district, the bonds are void, and that the taxpayers of the district whether willing or not, must not be allowed to pay them."

The trial court held the action would not lie in the name of the state on the relation of the attorney general. We said—

"It is obvious, that this interference on the part of the state is unnecessary for the protection of any rights. It is not a case where, but for the intervention of the state, an irremediable wrong will be perpetrated. Conceding the bonds to be void, each and every taxpayer has ample protection by an action of injunction. . . . It is obvious that the state as a state has no direct interest in this controversy, any more than in a controversy between individuals. The payment of these bonds may be illegal, but their payment works no greater wrong to the state than the payment by a single individual of an illegal debt. The single individual may if he chooses by appealing to the ordinary proceedings of the law protect himself against such illegal payment. So may the many taxpayers. . . . As private citizens, unless specially authorized, may not interfere to compel the performance of a mere public duty, or restrain the doing of a mere public wrong, so the state, having no

direct interest, may not interfere to protect individuals from the illegal acts of a public officer where such individuals have, in the ordinary course of the law, ample and adequate means of protection."

This authority was followed in *Center Township v. Hunt, Treasurer,* 16 Kan. 430. In that case the township had issued railroad aid bonds. Subsequently the township brought an action to enjoin the county treasurer from collecting the tax to pay these bonds on the ground that they were void. The portion of the opinion in which we are interested is—

"It is claimed by plaintiff that the tax is void because said bonds are void, and that said bonds are void because issued in excess of ten per cent. of 'the taxable property of said Center township' . . . Now suppose they are invalid, still the plaintiff has no right to enjoin the tax levied upon the taxable property of the various individuals of the township to pay the interest on them. . . . But the law of this state is such that the public cannot sue merely for the protection of private rights. . . . Public rights and private rights, public actions and private actions, are kept separate; and no action can be brought except by the party having a special interest in the result. . . . An action cannot be brought merely for the benefit of an individual in the name of the public."

In *City of Atchison v. The State, ex rel.,* 34 Kan. 379, 8, Pac. 367, we held:

"Where a city, without authority of law, caused a tax to be levied and extended upon the tax-roll for the purpose of creating a fund with which to pay certain bonds theretofore issued and delivered in payment of bridges that had been built therein, and after the tax-roll had come to the hands of the county treasurer for the collection of the taxes a number of the tax-payers of the city voluntarily paid the illegal tax thus levied, held, that the public has no such interest in the money thus paid as will authorize the state to interfere and to maintain an action in the name of the state enjoining the treasurer from paying out the money so received by him, and from disbursing it in accordance with the will of those who paid the same."

The action was in the name of the state on the relation of the county attorney of Atchison county to enjoin the county treasurer from collecting a tax to pay the interest on some bridge bonds it alleged were void. Part of the tax had been paid when the action was brought. We said:

"Conceding, then, that the tax is illegal, what interest has the state of Kansas in the controversy? If private rights and private interests only are involved, then the state cannot maintain the action. . . . As heretofore stated, the real controversy in the case is in regard to the disposition of the money which parties have voluntarily paid, or may pay, to the county treasurer for a specific purpose. . . . Its disposition is a matter of private interest between the holder of the bonds and the taxpayers of the city. So that in no

view which can be taken of the case can we say that there is such a public interest as will authorize the state to interfere, or to maintain the action."

*The City of Argentine v. The State, ex rel.*, 46 Kan. 430, 26 Pac. 751, was an action brought in the name of the state by the county attorney to enjoin the city from appropriating or expending any portion of the proceeds of the sales of city bonds issued for the purpose of building a city hall. We said—

"No complaint is made of the proposed expenditure either by the city or any tax-payer of the city, and why should the state or the county attorney in its behalf intervene? . . . From the argument of counsel, it would seem that the principal objections to the appropriation have been the location of the site, and the supposed want of power in the city to purchase the site, but neither of these objections can be sustained; and, so far as the question of expending the money which the city has provided for that purpose is concerned, we must hold, under the authorities, that the public has no such interest in the same as will warrant the interference of the county attorney."

*Bank of Topeka v. Majestic Fire Ins. Co.*, 119 Kan. 689, 240 Pac. 954, was a case where the state intervened in a receivership action and sought to prevent the payment to the president of an insolvent insurance company of claims of other stockholders held by him, the assignments of which had been obtained by fraud. We said—

"The state, however, had no such interest as would entitle it to object to the allowance of the claims. . . . The assignors might offer to rescind by tendering to Bagley the amount received for the stock, or they might sue in damages to recover their loss. They only could complain. The attorney-general cannot supervise all contracts of sale between citizens of the state," citing *State, ex rel., v. McLaughlin*, supra.

The rule announced in the foregoing cases is in point here. No taxpayer saw fit to bring any action to enjoin these levies nor did any pay his taxes under protest. Should the state prevail in this action the result would be to give the taxpayers relief to which they would not be entitled in an action brought by them and for which they have not asked. It is litigation in which the taxpayers as individuals are interested and in which the state has no interest.

Since we have demonstrated that a decision on the constitutionality of G. S. 1949, 39-364, would not be applicable to any actual controversy, for which we could afford relief, we will not pass on that question.

The writ is denied and judgment rendered for defendants.